W. R. ZANES & Co. v. UNITED STATES

**No. 4462.**—Invoice dated Widnes, England, April 23, 1937.
Certified April 24, 1937.
Entered at Houston, Tex., June 3, 1937.
Entry No. 522–H.

(Decided November 29, 1938)

*Puckhafer & Rode* (*George J. Puckhafer* of counsel) for the plaintiffs.
*Webster J. Oliver*, Assistant Attorney General (*Dorothy C. Bennett*, special attorney), for the defendant.

DALLINGER, Judge: This appeal to reappraisement involves the question of the dutiable value of certain tungsten powder imported from England and entered at the port of Houston, Tex., in June 1937. The merchandise was invoiced at 5s. 7½d. and entered at 5s. 1½d. less consular fee, freight, insurance, and bill of lading dues, and appraised at the invoiced unit value less consular fee, freight, insurance, and bill of lading dues.

At the first hearing, held at New York on November 16, 1937, the plaintiffs offered in evidence an affidavit of Frederick Croll, secretary of the English manufacturing company, which was admitted in evidence as Exhibit 1. In this affidavit the affiant states that in the invoice herein the merchandise was inadvertently charged as 3,000 lbs. of tungsten powder at 5s. 7½d. per pound, amounting to £843 15s. 0d. and should have correctly read 3,000 lbs. at 5s. 1½d. per pound, amounting to £768 15s. 0d. He further states that the British home price on April 27, 1937, was 5s. 1½d. per pound. In said affidavit are also given sales on April 23, 1937, and on May 7, 1937, at the same price.

At the second hearing, held at Houston, Tex., on March 31, 1938, counsel for the Government offered in evidence a summary of examination and appraisement, the consular invoice, and report of the assistant chief chemist at the port of New York, covering entry 882245 made at the port of New York showing the sale of 40 double drums of 99.39 per centum tungsten powder by High Speed Steel Alloys, Ltd., of Ditton Road, Widnes, England, to C. Tennant Sons & Co., Inc., of New York, on May 21, 1937, at the price of 5s. 7½d. per pound. The said documents were admitted in evidence as Exhibit 2.

At the third hearing, held in New York on October 18, 1938, the plaintiffs offered in evidence the testimony of L. H. Rouillion who testified that he was connected with C. Tennant Sons & Co., Inc.; that he had charge of the importation and sale of the merchandise

at bar; that the merchandise in question consists of what is commonly known in trade as minimum 98 per centum grade tungsten powder; that the invoice in Exhibit 2 represents an importation of another grade of tungsten powder, namely, minimum 99 per centum tungsten powder; that the price of tungsten powder depends upon the tungsten content, there being two grades, one containing 98 per centum and the other 99 per centum of tungsten, which different grades always command different prices; that he was familiar with the publication "American Metal Market"; and that such publication is a recognized trade paper on metal quotations.

At this juncture the paper in question was admitted as Exhibit 3, for the sole purpose of showing that the value of tungsten powder depends upon its tungsten content.

The witness then testified that while in the instant case the invoice value given was 5s. 7½d. and the entered value was 5s. 1½d., the price actually paid was 5s. 1½d.; that the entry in the instant case was made at 5s. 1½d., even though the consular invoice showed 5s. 7½d., which was a typographical error; that the market value at the time of shipment was 5s. 1½d. for 98 per centum and 5s. 7½d. for 99 per centum tungsten powder; that this error was discovered and corrected by a letter from High Speed Steel Alloys, Ltd., to C. Tennant Sons & Co. dated May 11, 1937, and admitted in evidence herein as Exhibit 4.

On cross-examination the witness testified that there was a trade paper in England similar to Exhibit 3, showing that similar merchandise was offered for sale according to tungsten content but that he did not have a copy of such paper with him; that the instant merchandise was offered to the witness as minimum 98 per centum grade at a price of 5s. 1½d. by cable and subsequently confirmed by letter; and that he did not have the cablegram or letter with him but that he could produce them.

On redirect examination the witness stated that he did not produce them for the reason that all of the information that would be contained in said cablegram and letter was already contained in the affidavit admitted in evidence herein as Exhibit 1.

Upon this record I find the following facts:

1. That there are two grades of tungsten powder, described according to the tungsten content as minimum 98 per centum tungsten powder and as minimum 99 per centum tungsten powder, respectively.

2. That the merchandise at bar consists of the grade known as minimum 98 per centum tungsten powder.

3. That the foreign value of the tungsten powder in the importation here involved is 5s. 1½d. per pound, less consular fee, freight, insurance, and bill of lading dues; and that there is no higher export value.

4. That said foreign value constitutes the dutiable value of the involved tungsten powder.

Judgment will be rendered accordingly.